# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JANET KRAUSE**, | : Civil Action No. 1:11-CV-01080 |
| **Plaintiff**, | : |
| | : (Chief Judge Conner) |
| v. | : |
| **PENNSYLVANIA DEPARTMENT OF MILITARY AND VETERAN AFFAIRS**, *et al.*, | : |
| **Defendants** | : |

## MEMORANDUM

Presently before the court in the above-captioned matter is the motion for summary judgment (Doc. 32), filed by defendants Jessica Wright ("Wright") and Cindy Dwyer ("Dwyer"), asserting: (1) that the Eleventh Amendment bars plaintiff Janet Krause's ("Krause") claims against defendants in their official capacities and, (2) that there was no due process violation because defendants adhered to applicable internal army regulations. For the reasons that follow, the court will grant the defendants' motion for summary judgment (Doc. 32).

## I. **Background**[1]

At all times material hereto, Defendant Wright was the Adjutant General of Pennsylvania and the commander of the Pennsylvania National Guard, including all Air and Army units, from 2004 until 2012. (Doc. 33 ¶¶ 1, 3). Defendant Dwyer is a Colonel in the Pennsylvania Army National Guard ("PAARNG") under whose chain of command Krause was a non-commissioned officer. (Id. ¶ 2). Wright's responsibilities as Adjutant General included maintaining the enlisted force structure and ensuring sufficient qualified personnel in every necessary location and at every rank. (Id. ¶ 4). In accordance with Army Regulation ("AR") 135-205, Qualitative Retention Boards ("QRB") are used to maintain an enlisted force structure by reviewing the records of enlisted personnel who qualify for retirement benefits at age sixty, based on at least twenty years of service, and making recommendations for retention or non-retention for further service with the PAARNG. (Id. ¶¶ 5-6).

---

[1] Local Rule 56.1 states that the party opposing a motion for summary judgment shall file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement of material facts and noting genuine issues to be tried. All material facts in the statement of the moving party are admitted unless properly refuted by the opposing party. See L.R. 56.1. As the opposing party, plaintiff Krause filed a separate statement of facts, but did not respond to the numbered paragraphs set forth in defendants' statement. After careful scrutiny of all statements, the court finds that Krause's statement does not contradict the material facts in defendants' statement. In accordance with the standard of review for a motion for summary judgment, see infra Part II, the court will deem defendants' statement of material facts admitted, but nevertheless present the facts in the light most favorable to Krause, the nonmoving party.

In anticipation of a QRB convened in February 2010, defendant Wright and Brigadier General Jerry Beck determined a target number of 73 PAARNG soldiers for non-retention based on broad statistical goals and conveyed the information to the February 2010 QRB in a formal charge. (Id. ¶¶ 8-10; Doc. 36 at 3). Dwyer drafted a memorandum to the QRB, which contained meeting information as well as the criteria for identifying qualified soldiers in the zone of consideration. She also recommended retention or non-retention for each soldier under her command who was in the "zone of consideration" to be reviewed by the QRB (Doc. 33 ¶¶ 12, 24). On December 9, 2009, Dwyer met with Krause to inform her that Dwyer would recommend non-retention to the QRB, (id. ¶ 15), and Krause then made a selection regarding options available to her after separation from the PAARNG. (Id. ¶ 17). Krause also submitted a written response to Dwyer's recommendation for the QRB's consideration. (Id. ¶ 16). Neither Dwyer nor Wright was a member of the QRB, and they did not discuss particular soldiers under review. (Id. ¶¶ 10, 23, 38). After receiving recommendations from the QRB, it was Wright's duty, as Adjutant General, to approve or disapprove such recommendations. (Id. ¶ 40).

When the February 2010 QRB convened to review approximately 700 soldiers, it encountered technical and weather-related difficulties that affected its ability to timely analyze the records. (Id. ¶¶ 21-22). At the end of its review, the QRB recommended retention of Krause, (Doc. 36 at 2), but further recommended non-retention of 167 soldiers, more than double the number contained in the formal charge. (Doc. 33 ¶¶ 26-27). As a result of the significant deviation from the

3

statistical goals, defendant Wright disapproved the recommendations of the February 2010 QRB and convened another QRB in March 2010 with new members, using the same formal charge and statistical goals. (Id. ¶¶ 29-31, 33). The March 2010 QRB reviewed the same information regarding the soldiers in the zone of consideration and recommended non-retention of 72 soldiers. (Id. ¶¶ 34-35). As Adjutant General, Wright accepted the recommendations of the March 2010 QRB as consistent with the statistical goals stated in the formal charge. (Id. ¶¶ 35-36). Unlike the February 2010 QRB, the March 2010 QRB did not recommend Krause for retention. (Doc. 36 at 3).

The instant motion arises out of the amended complaint filed on January 23, 2012 (Doc. 13) against defendants Wright and Dwyer in their individual and official capacities. Krause challenges her separation from the PAARNG under the due clause of the Fifth and Fourteenth Amendments of the United States Constitution because defendants allegedly failed to adhere to the internal regulations of PAARNG by improperly disapproving the recommendations of the February 2010 QRB. (Doc. 13 at 3). Krause seeks a declaratory judgment and an award of compensatory damages, punitive damages, and costs of the litigation. (Id. at 8).

AR 135-205, in relevant part, states that the convening authority will review the qualitative retention board recommendations, and within 30 days, the convening authority will, among other options, approve the report as submitted or "disapprove a part of or the whole report and require the board to reconsider some or all cases. This will occur if the board report contains substantial administrative

4

errors or procedural deficiencies that adversely affect those considered. The convening authority will give supplemental guidance to the board to correct the deficiencies, or may appoint a new board, if necessary." U.S. DEP'T OF ARMY, REG. 135-205, ENLISTED PERSONNEL MANAGEMENT sec. IV 2-15(a) (11 Mar. 2008) [hereinafter AR 135-205].

Defendants filed this motion for summary judgment on January 18, 2013, asserting that the Eleventh Amendment bars Krause's claims for damages against defendants in their official capacities and that Krause cannot establish her due process claim because defendants adhered to AR 135-205. (Doc. 34). Krause does not make any argument regarding the Eleventh Amendment bar to her official-capacity claims, but contends that there are genuine issues of material fact regarding compliance with the regulation. (Doc. 36 at 7-8). These issues are fully briefed and ripe for disposition.

## II. **Standard of Review**

Summary judgment is appropriate only when "there is no genuine dispute as to any material fact," and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The burden of proof is upon the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

5

250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also FED. R. CIV. P. 56(c), (e). Only if this threshold is met may the cause of action proceed. Pappas, 331 F. Supp. 2d at 315. Accordingly, the court will view the facts "in the light most favorable to the party opposing summary judgment." Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990).

### III. Discussion

Defendants move for summary judgment on two principal grounds. First, defendants argue that the Eleventh Amendment to the United States Constitution bars claims for damages against them in their official capacities. Second, defendants contend that there was no due process violation, as Krause alleges, because defendants did not deviate from the governing army regulation in disapproving the February 2010 QRB recommendation for a procedural deficiency. The court will now address each of these issues.

#### A. Eleventh Amendment Bar to Claims for Damages

As an initial matter, defendants move for summary judgment because the Eleventh Amendment bars claims for damages against them in their official capacities. The Eleventh Amendment precludes suits in law or equity commenced against a state by citizens of another state or foreign state. U.S. CONST. amend. XI. Although the Eleventh Amendment by its terms does not bar suits against a state by its own citizens, the Supreme Court has consistently held that a state is immune from such suits in federal court regardless of the type of relief sought. See Edelman

6

v. Jordan, 415 U.S. 651, 662-63 (1974); Hans v. Louisiana, 134 U.S. 1 (1890); see also Seminole Tribe of Florida v. Florida, 517 U.S. 44, 58 (1996) (stating that the relief sought is irrelevant to the question whether a suit against a state is barred by the Eleventh Amendment). State sovereign immunity further extends to prohibit federal courts from hearing suits by private parties against a state's agencies, see Alabama v. Pugh, 438 U.S. 781, 781-82 (1978), or allowing claims for money damages against state officials acting in their official capacities.[2] See Edelman, 415 U.S. at 665-71 (concluding that an award for retroactive monetary damages against officials in their official capacity is barred because it would necessarily be paid by the state); Kentucky v. Graham, 473 U.S. 159, 169 (1985) ("[A] judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents.") (citation omitted).

In the case *sub judice*, the Eleventh Amendment precludes Krause's official-capacity claims. As the Third Circuit noted in Johnson v. Orr, 780 F.2d 386 (3d Cir. 1986), the National Guard occupies a unique role in the federal structure; it is an

---

[2] Moreover, in the military context, Feres v. Unites States, 340 U.S. 135 (1950), and Chappell v. Wallace, 462 U.S. 296 (1983), established a *per se* prohibition on claims for damages by military personnel against superior military officers. The Third Circuit further extended the rule of intramilitary immunity to bar claims for damages by state military personnel against state military officers for constitutional violations. See Jorden v. Nat'l Guard Bureau, 799 F.2d 99, 107-08 (3d Cir. 1986); United States *ex rel.* Karr v. Castle, 746 F. Supp. 1231, 1247 (D. Del. 1990) (holding that former National Guard member challenging constitutionality of separation from service could not bring claims for damages against superior officers due to intramilitary immunity and state sovereign immunity under the Eleventh Amendment). Intramilitary immunity, therefore, would also bar Krause's claims for damages against defendants.

7

agency that serves both the state and federal governments.  Id. at 392.  The National Guard is the modern successor to the state militia, see Jorden, 799 F.2d at 101, and the United States Constitution places power of appointing personnel to the state militia in the hands of the state.  U.S. CONST. art. I, § 8, cl. 16.  In the instant case, the complaint names as defendants Jessica L. Wright in her official capacity as retired Major General and Adjutant General in the PAARNG, and Cindy Dwyer in her official capacity as Colonel in the PAARNG.  (Doc. 13).  As officials of the state militia, PAARNG, defendants Wright and Dwyer are immune from suit, and particularly claims for damages, unless an exception applies.

There are three exceptions to the jurisdictional bar of the Eleventh Amendment: (1) a state may waive its immunity; (2) Congress may abrogate immunity pursuant to the Fourteenth Amendment; and (3) a citizen may sue state officials in their official capacities for prospective injunctive relief.  See Koslow v. Pennsylvania, 302 F.3d 161, 168 (3d Cir. 2002).  None of the exceptions to the Eleventh Amendment apply to this case.  The Commonwealth of Pennsylvania has preserved its immunity from suits in federal court via statute.  See 42 PA. CONS. STAT. § 8521(b) ("Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States."); Chittister v. Dep't of Cmty. and Econ. Dev., 226 F.3d 223, 227 (3d Cir. 2000) (reviewing section 8521 and finding that "Pennsylvania has not consented to suit in federal court").  In addition, there is no statute at issue here by which Congress could abrogate states' immunity

8

under the Eleventh Amendment. See Quern v. Jordan, 440 U.S. 332, 345 (1979) (finding that Congress did not abrogate states' immunities by enacting the Civil Rights of 1871, 42 U.S.C. § 1983). Finally, Krause does not seek prospective injunctive relief and requests only a declaratory judgment and an award of compensatory damages, punitive damages, and costs of the litigation. (Doc. 13 at 8). Therefore, the court concludes that the Eleventh Amendment and its progeny bar Krause's claims for damages against defendants in their official capacities.

### B. Military Regulations and Due Process

Defendants also assert a right to judgment as a matter of law because Krause cannot establish that defendants violated her right to due process under the Fifth and Fourteenth Amendments when defendants disapproved the February 2010 QRB's report due to a procedural deficiency. Krause argues that there is a genuine issue of material fact as to whether the reason for disapproval constituted a procedural deficiency and whether Wright complied with other provisions under AR 135-205.

As an initial matter, federal courts will not review discretionary decisions of the military made within its valid jurisdiction and will only interpose itself in the internal operations of the military under extraordinary circumstances. O'Mara v. Zebrowski, 447 F.2d 1085, 1087, 1089 (3d Cir. 1971); Dilley v. Alexander, 603 F.2d 914, 919–20 (D.C. Cir. 1979) (noting that the courts are reluctant to interfere with the military's exercise of discretion over internal affairs, particularly personnel changes through its promotion or discharge processes pursuant to military regulations).

9

However, the court has jurisdiction over claims that the military did not comply with its own regulations and may review the military's procedures to determine whether such procedures comport with requirements of due process. O'Mara, 447 F.2d at 1087-89; Antonuk v. United States, 445 F.2d 592, 595 (6th Cir. 1971) ("[V]iolation by the military of its own regulations constitutes a violation of an individual's rights to due process of law."). Consequently, the court will review Krause's claim that defendants violated her right to due process by failing to comply with AR 135-205.

The court must address three main questions: (1) whether the interpretation of "procedural deficiency" is a question of law for the court or a question of fact appropriate for a jury; (2) if it is a question of law, whether the reason for disapproval was a "procedural deficiency" under AR 135-205; and (3) whether, pursuant to AR 135-205, Wright was required to ask the QRB to reconsider some cases, give the QRB supplemental guidance to correct deficiencies, and only convene a new board if necessary.

> i.  *Question of Law or Fact*

Plaintiff Krause and defendants Wright and Dwyer dispute whether a "procedural deficiency" under AR 135-205 is a question of law for the court or a question of fact for the jury. It is well-established that the interpretation of law, regulation, or statute presents a question of law for the court and not a question of fact to be resolved by the jury. See, e.g., Bammerlin v. Navistar Int'l Transp. Corp., 30 F.3d 898, 900 (7th Cir. 1998). Moreover, for mixed questions of law and fact,

where the facts are established and the rule of law is undisputed, and the issue is whether the facts satisfy the relevant legal standard, see Ornelas v. United States, 517 U.S. 690, 696-97 (1996), the court is not precluded from adjudicating a motion for summary judgment. See Atwood v. Kerlin, 264 F.2d 4 (2d Cir. 1959); Dyal v. Union Bag-Camp Paper Corp., 263 F.2d 387 (5th Cir. 1959).

The parties do not dispute that AR 135-205 is the applicable legal standard, nor do they dispute the facts leading to Krause's separation from the PAARNG. Hence, the only issue is whether the reason for disapproval of the February 2010 QRB's recommendations satisfies the term "procedural deficiency" under AR 135-205. The court finds that this issue is a mixed question of law and fact. See, e.g., Meridian Bank v. Alten, 958 F.2d 1226, 1229 (3d Cir. 1992) (holding that the issue of whether defendants' failure to keep or preserve records was "justified" within the meaning of 11 U.S.C. § 727(a)(3) was a mixed question of law and fact); Rosen v. N.L.R.B., 455 F.2d 615, 618 (3d Cir. 1972) (finding a mixed question of fact and law as to whether retired employee met the eligibility requirements for entitlement to pension credits).

    *ii.    Procedural Deficiency*

AR 135-205, in relevant part, states that the convening authority will "disapprove a part of or the whole report . . . . if the board report contains

*substantial administrative errors or procedural deficiencies that adversely affect those considered.*" AR 135-205, sec. IV 2-15(a) (emphasis added).[3]

Generally, a regulation is construed in the same manner as a statute, which is by ascertaining its plain meaning. Lewis v. Atlas Van Lines, Inc., 542 F.3d 403, 409 (3d Cir. 2008) (stating that unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning); Burns v. Barnhart, 312 F.3d 113, 125 (3d Cir. 2002). When analyzing a regulatory provision, the court must examine the text of the regulation as a whole, reconciling the section in question with sections related to it. See Samantar v. Yousuf, 560 U.S. 305 (2010); United States v. Cooper, 396 F.3d 308, 313 (3d Cir. 2005) (finding that statutory interpretation is a "holistic endeavor" and courts do not only look to a particular clause, but will examine it in connection with the whole statute). By its plain meaning, "substantial administrative errors or procedural deficiencies that adversely affect those considered" indicates that the convening authority may disapprove the report where there are such significant problems with the process of the QRB that it would negatively affect the rights of those soldiers in the zone of consideration. In Woodard v. Marsh, 658 F.2d 989 (5th Cir. 1981), the court

---

[3] According to Krause, defendants named (1) weather-related and technical problems and (2) the deviation from the formal charge as procedural deficiencies in their rejection of the February 2010 QRB report. However, the record does not reflect that Defendants identified weather-related or technical problems as a procedural deficiency or reason for disapproval. The court thus concludes that weather-related and technical problems were not a procedural deficiency to support disapproval of the February 2010 QRB's report.

12

interpreted a similar army regulation regarding a board convened to recommend discharge for failure to meet academic standards. Id. at 991. That regulation defined the comparable term "substantial error" as "jurisdictional error (e.g. failure to meet essential requirements with regard to appointment or composition) or an error which has a material adverse effect on an individual's substantial rights." Id. at 997. The court notes that, in the case *sub judice*, the February 2010 QRB substantially deviated from the Adjutant General's directive to discharge only 73 soldiers by recommending the discharge of 167 soldiers. (Doc. 33 ¶¶ 26-27; Doc. 33-2). It is difficult to conjure a clearer example of an error that has a material adverse effect on an individual soldier's rights. Obviously, the discharge of more than twice as many soldiers as expected would create a negative impact on the PAARNG in maintaining an appropriate force structure with sufficient qualified personnel at every rank, as well as on the soldiers who would have been unnecessarily discharged from service. Based on its plain meaning, the court finds that "substantial administrative errors or procedural deficiencies" includes the failure of the February 2010 QRB to adhere to the instructions of the formal charge.

Moreover, AR 135-205 gives specific examples of reasons to disapprove a QRB's recommendations, including, but not limited to, improper composition of the QRB and the failure of the QRB to comply with the memorandum of instructions ("MOI") issued by the convening authority. See AR 135-205, sec. IV 2-15(b). Although AR 135-205 does not explicitly include the concept of a "formal charge," it describes the contents of a MOI issued by the convening authority and includes a

13

sample in the regulation.  See AR 135-205, sec. III 2-9, Figure 2-6.  The MOI generally includes the purpose of the qualitative retention program, the criteria for soldiers in the zone of consideration, and guidance on factors to be considered in determining retention potential.  See AR 135-205, Figure 2-6.  In this case, former Adjutant General Wright issued both a formal charge and a MOI drafted by Colonel Dwyer.  (Doc. 33 ¶¶ 9, 24).  The formal charge included many of the same instructions as the sample MOI in the regulation and "specific by-grade targets to assist [Wright] in Enlisted Force Management."  (Doc. 33-2).  Therefore, the court concludes that Wright properly considered the failure of the February 2010 QRB to follow the instructions of the formal charge to be a "substantial administrative error" or "procedural deficiency" based on substantially similar reasons for disapproval listed in AR 135-205.

### iii.  *Convening a new QRB*

Krause contends that, even if there was a procedural deficiency, defendants were obligated under AR 135-205 to ask the QRB to give the QRB supplemental guidance to correct deficiencies and to convene a new board only as a last resort.

In other cases regarding discharge from the military, courts have focused on the permissive nature of the regulatory procedures and given significant deference to internal military decisions.  See, e.g., Woodard, 658 F.2d at 997 (finding that the terms of the regulation are permissive and the appointing authority was simply not required to send the case back to the board even for substantial errors).  Similarly, by the express terms of AR 135-205, Wright had discretion to disapprove the report

14

of the February 2010 QRB, in whole or in part, and to require the QRB to reconsider some or all cases. The court further notes that approval and disapproval were not the only two options Wright had under AR 135-205; she also had the discretionary authority to modify the report for numerous reasons. In this case, Wright chose to disapprove the entire report, and there was simply no requirement that Wright ask the February 2010 QRB to reconsider certain cases.

The subject regulation also provides that "[t]he convening authority will give supplemental guidance to the board to correct the deficiencies." AR 135-205, sec. IV 2-15(a). When viewed in isolation from the rest of the text, the responsibility to give supplemental guidance appears to be a mandatory provision. The court, however, must examine the text of the regulation as a whole, see Cooper, 396 F. 3d at 313, and it is clear that the requirement to give supplemental guidance is only applicable when the QRB is asked to reconsider some or all cases. As the convening authority, however, Wright had many options upon disapproval of the QRB report and was not compelled under the regulation to take further action with the February 2010 QRB. Instead, Wright chose to appoint a new QRB pursuant to Regulation 135-205 and, therefore, was not required to give supplemental guidance to the February 2010 QRB to correct the deficiencies.

Finally, AR 135-205 provides that when the convening authority disapproves the QRB's report, "[t]he convening authority . . . may appoint a new board, if necessary." AR 135-205, sec. IV 2-15(a). Although the language of the regulation is permissive, it is Krause's contention that "if necessary" qualified Wright's ability to

15

appoint a new QRB. The term "if necessary" is not defined by the regulation, and the court will look to the plain language and interpret the phrase in light of the text as a whole. See Cooper, 396 F. 3d at 313.

The term "if necessary" is to say "if it is necessary." "Necessary" not only means "compulsory" or "required," but it also means "of an inevitable nature," "logically unavoidable," and "determined or produced by the previous condition of things." Merriam-Webster's Collegiate Dictionary 828 (11th ed. 2009). In this case, based on the plain meaning of the term, the court concludes "may appoint a new board, if necessary" may mean appointing a new board if it is unavoidable or caused by the previous procedural deficiencies of the existing QRB. Importantly, the term "if necessary" is not conditioned on any event or circumstance. In Chiles v. Ceridian Corp., 95 F.3d 1505 (10th Cir. 1996), the court found that all four ERISA welfare benefit plans at issue gave the company almost unlimited discretion to change the plan, without any limitations or conditions. Id. at 1513-14. As a result, the meaning of the phrase "if necessary" could not fairly imply, as plaintiffs suggested, that the plans may be amended only as a last resort and to the extent necessary for fiscal survival. Id. As in Chiles, the court finds that the term "if necessary" in AR 135-205 is also not limited by any conditions and does not qualify the convening authority's ability to convene a new board.

In context, as the court notes *supra*, the convening authority has the ability to not only approve or disapprove the QRB's report, but may also modify the report for numerous reasons under the regulation. Even when disapproving the report,

16

the convening authority may choose to disapprove only a part of the report or also require the QRB to review some or all the cases. Given the scope of discretion entrusted to the convening authority by its terms, there is no evident requirement that the convening authority demonstrate necessity or exhaust other options before convening a new QRB. Under the circumstances, "if necessary" is properly construed as a further extension of discretion to the convening authority.

The court holds that defendants fully complied with the procedures outlined in AR 135-205 and, therefore, the requirements of due process.[4] As a result, there are any genuine issues of material fact and defendants are entitled to judgment as a matter of law.

## IV. <u>Conclusion</u>

For the reasons previously discussed, the court will grant defendants' motion for summary judgment (Doc. 32). An appropriate order will issue.

        /S/ CHRISTOPHER C. CONNER
       CHRISTOPHER C. CONNER
       Chief Judge, Middle District of Pennsylvania

Dated:       September 30, 2013

---

[4] Defendants also assert that Krause cannot establish a due process claim because defendants were not personally involved in any violation of due process. <u>See</u> <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988) (holding that defendant in a civil rights action must have personal involvement in the alleged wrongs). The court need not further address this argument because Krause did not bring a claim under 42 U.S.C. § 1983. Krause has only pursued a claim for due process violation under military law, which the court denies because defendants complied with AR 135-205.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JANET KRAUSE,** : | **Civil Action No. 1:11-CV-01080** |
| **Plaintiff,** : | |
| : | **(Chief Judge Conner)** |
| v. : | |
| **PENNSYLVANIA DEPARTMENT OF** : **MILITARY AND VETERAN AFFAIRS,** : *et al.*, : | |
| **Defendants** : | |

## **ORDER**

AND NOW, this 30th day of September, 2013, upon consideration of the motion for summary judgment (Doc. 32), filed by defendants Jessica L. Wright and Cindy Dwyer, and for the reasons discussed in the accompanying Memorandum, it is hereby ORDERED that:

1. Defendants' motion for summary judgment (Doc. 32) is GRANTED.

2. The Clerk of Court is directed to ENTER judgment in favor of defendants Jessica Wright and Cindy Dwyer and against plaintiff Janet Krause, and to CLOSE the above-captioned case.

                                              /S/ CHRISTOPHER C. CONNER
                                              CHRISTOPHER C. CONNER
                                              Chief Judge, Middle District of Pennsylvania